UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
2016 AUG 22 PM 4:56
CLERK
BY_____
DEPUTY CLERK

| | |
|---|---|
| JESSICA GINGRAS and ANGELA C. GIVEN, on behalf of themselves and all others similarly situated, )<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>JOEL ROSETTE, TED WHITFORD, TIM )<br>MCINERNEY, THINK FINANCE, INC., )<br>TC LOAN SERVICE, LLC, KENNETH E. )<br>REES, TC DECISION SCIENCES, LLC, )<br>TAILWIND MARKETING, LLC, )<br>SEQUOIA CAPITAL OPERATIONS, LLC )<br>and TECHNOLOGY CROSSOVER )<br>VENTURES, )<br>)<br>Defendants. ) | Case No. 5:15-cv-101 |

**OPINION AND ORDER**
(Docs. 123, 125, 126, 135, 136, 141, 143)

In this putative class action, Plaintiffs sue individuals and companies involved in an online lending venture operated by the Chippewa Cree Tribe of the Rocky Boy's Indian Reservation in Montana (the Tribe), claiming that the "payday" loans offered by Plain Green, LLC violate federal and state law because the interest rates are usurious and because the loans involve other unlawful features. (*See* Doc. 18, First Amended Complaint ("FAC").) In an Opinion and Order filed May 18, 2016, the court denied Defendants' motions to compel arbitration, and denied portions of Defendants' motions to dismiss. *See Gingras v. Rosette*, No. 5:15-cv-101, 2016 WL 2932163 (D. Vt. May 18, 2016), *appeal docketed*, No. 16-2019 (2d Cir.

June 17, 2016) [hereinafter, the "May 18 Order"].¹ Familiarity with the May 18 Order is presumed.

Numerous motions are now pending. On June 1, 2016, TCV and Sequoia filed a motion to clarify the May 18 Order, requesting that the court grant their motions to dismiss for lack of personal jurisdiction, but with leave to amend following completion of jurisdictional discovery. (Doc. 123.) On June 3, 2016, Plaintiffs filed a motion for entry of a discovery schedule. (Doc. 125.) On June 13, Plaintiffs filed a motion for sanctions against TCV and Sequoia, alleging that they had failed to comply with the May 18 Order requiring jurisdictional discovery. (Doc. 126.) On June 17, 2016, all Defendants filed notices of appeal as to the May 18 Order, seeking to appeal—among other things—the court's rulings on tribal immunity and arbitrability. (*See* Docs. 130, 131, 133, 134, 140.) Also on that date, the Tribal Defendants and Kenneth Rees filed motions for certificates of appealability (Docs. 135, 141), and all Defendants filed or joined motions to stay pending appeal (Docs. 136, 137, 143, 144).

I.    **TCV and Sequoia's Motion to Clarify**

The court previously concluded that, absent RICO jurisdiction over TCV and Sequoia under 18 U.S.C. § 1965(b), there was an insufficient basis for making a ruling about minimum contacts and due process requirements as to those Defendants because the FAC alleged very little about their respective roles in the Plain Green operation. (Doc. 122 at 24–25.) The court also asserted, however, that it would exercise its discretion to permit discovery on the question of personal jurisdiction. (*Id.* at 25.) In its discussion of the substantive RICO claims, the court limited its analysis to the allegations in the FAC, and concluded that the allegations did not describe TCV or Sequoia as having any role in directing the affairs of the enterprise. (*Id.* at 60–

---

¹ The May 18 Order appears on the docket of this case as Doc. 122; for simplicity the court refers to Doc. 122 when citing portions of the May 18 Order below.

2

63.) The court then stated, however, that since it was permitting discovery as to TCV and Sequoia's minimum contacts with Vermont, it would also permit Plaintiffs to discovery facts related to their "additional allegations" (Doc. 85-1) on the issue of TCV and Sequoia's "participation" in the affairs of the enterprise. (*Id.* at 63–64.) Ultimately, the court denied TCV and Sequoia's motions to dismiss without prejudice, and granted leave to renew following discovery on the issue of personal jurisdiction. (*Id.* at 73.)

TCV and Sequoia request that the court clarify its May 18 Order and grant their motions to dismiss for lack of personal jurisdiction, but with leave to amend following completion of jurisdictional discovery. (Doc. 123.) TCV and Sequoia assert that dismissal with leave to amend would solve a "procedural conundrum"; they say that unless Plaintiffs amend their pleadings to allege new jurisdictional facts, the deficient FAC provides no mechanism for further motion practice. (Doc. 123-1 at 3.) Plaintiffs maintain that there is nothing to clarify; that there is no "procedural conundrum"; and that dismissal with leave to amend will prejudice them because the statute-of-limitations period will run while discovery is conducted. (Doc. 128 at 1.) TCV and Sequoia reply that it would be meaningless for them to renew their motions to dismiss a complaint that has already been found deficient, and that the more pragmatic approach is to dismiss the FAC with leave to amend. (Doc. 150 at 2.) They also assert that Rule 15(c)'s relation-back doctrine defuses any potential statute-of-limitations problem. (*See id.* at 3–4.)

When deciding a Rule 12(b)(2) motion, the court "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (per curiam) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Haber v. United States*, 823 F.3d 746, 753 (2d Cir.

2016) ("In general, a plaintiff may obtain discovery in connection with issues related to the court's jurisdiction."). "[A] court should take care to give the plaintiff ample opportunity to secure and present evidence related to the existence of jurisdiction." *Haber*, 823 F.3d at 753 (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 149 (2d Cir. 2011)). When courts authorize discovery to resolve a Rule 12(b)(2) motion, it is typically in cases where the plaintiff has made less than a *prima facie* showing, but has instead made "a threshold showing that there is some basis for the assertion of jurisdiction" or a "sufficient start" toward establishing jurisdiction. *See Cernansky v. Lefebvre*, 88 F. Supp. 3d 299, 309 (D. Vt. 2015); *Ayyash v. Bank Al-Madina*, No. 04 Civ. 9201(GEL), 2006 WL 587342, at *5 (S.D.N.Y. Mar. 9, 2006) (quoting *Daval Steel Prods. v. M.V. Juraj Dalmatinac*, 718 F. Supp. 159, 162 (S.D.N.Y. 1989) and *Stratagem Dev. Corp. v. Heron Int'l N.V.*, 153 F.R.D. 535, 547–48 (S.D.N.Y. 1994)).

 Here, although TCV and Sequoia contend that Plaintiffs have not made a "sufficient start" to justify jurisdictional discovery (Doc. 150 at 3), the court's prior decision to exercise its discretion and permit such discovery suggests otherwise. Indeed, the court noted Plaintiffs' "additional allegations" regarding TCV and Sequoia's "participation" in the affairs of the enterprise. (Doc. 122 at 63.) Although the court was unwilling to treat the "additional allegations" as amending the complaint (Doc. 122 at 63), the court could properly consider those allegations in determining whether Plaintiffs had made a "sufficient start" toward establishing jurisdiction. *See Cernansky*, 88 F. Supp. 3d at 309 (denying Rule 12(b)(2) motion without prejudice, and authorizing jurisdictional discovery, on the strength of materials highlighted in plaintiff's brief in opposition). Accordingly, the procedural posture on this issue is properly the same as in *Cernansky*, and TCV and Sequoia's motion to clarify will be denied.

II.  **Motions for Certificates of Appealability**

In separate motions, the Tribal Defendants and Defendant Rees seek certificates of appealability under 28 U.S.C. § 1292(b).[2] (*See* Docs. 135, 141.) The Tribal Defendants assert that certification is appropriate on the "discrete issue" of whether RICO confers a private right to equitable relief. (Doc. 135-1 at 5.) Rees seeks certification as to whether the court has personal jurisdiction over him, and as to whether the pleadings are sufficient against him. (*See* Doc. 141 at 1.) Plaintiffs maintain that the motions are a "Trojan horse," and granting the motions would certify the entire May 18 Order rather than just those three issues. (Doc. 154 at 1.) Plaintiffs also argue that none of the proposed certified issues meets the test for certification.

A.  **Certification Standard**

Generally, "denials of a motion to dismiss are not appealable as 'final decisions' of the district courts under 28 U.S.C. § 1291." *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013). However:

> a district court may certify an appeal pursuant to 28 U.S.C. § 1292(b) when it is "of the opinion that [the relevant] order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."

---

[2] That subsection provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

5

*Id.* (alteration in original) (quoting 28 U.S.C. § 1292(b)). Thus, a district court may grant leave to file an interlocutory appeal under 28 U.S.C. § 1292(b) if it determines that three conditions are met: "(1) the ruling on which the appeal is sought involves a controlling question of law; (2) there is substantial ground for a difference of opinion as to that controlling question of law; and (3) an immediate appeal will materially advance the litigation." *Patient A v. Vt. Agency of Human Servs.*, No. 5:14-cv-00206, 2015 WL 8665349, at *1 (D. Vt. Dec. 11, 2015) (internal quotation marks omitted). "Section 1292(b) is intended to provide a 'rare exception to the final judgment rule that generally prohibits piecemeal appeals.'" *Jenkins v. Miller*, No. 2:12-cv-184, 2014 WL 5421228, at *1 (D. Vt. Oct. 24, 2014) (quoting *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996)). Generally, the court construes the requirements for certification strictly and grants certification "only in 'exceptional cases where early appellate review might avoid protracted and expensive litigation.'" *Patient A*, 2015 WL 8665349, at *1 (quoting *Wool v. Pallito*, No. 2:11-cv-169, 2012 WL 1952990, at *8 (D. Vt. May 30, 2012)).[3]

To determine whether an issue is a controlling question of law, the court considers whether: "reversal of the district court's opinion could result in dismissal of the action; reversal of the district court's opinion . . . could significantly affect the conduct of the action, or; the certified issue has precedential value for a large number of cases." *Patient A*, 2015 WL 8665349, at *1 (ellipsis in original) (quoting *SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223,

---

[3] Noting that the Second Circuit will already be hearing appeals as of right regarding tribal sovereign immunity and arbitrability, Rees asserts that the standard should be "relaxed" in this case. (Doc. 141-2 at 9.) Persuasive authority does indeed suggest that "[i]n cases in which appeal is going to be taken in any event, § 1292(b) should be available to frame an optimal appeal package without undue concern for the criteria that might defeat certification if no appeal could otherwise be taken." 16 Charles Alan Wright et al., Federal Practice & Procedure § 3929.1 (3d ed. 2016). However, that same authority states that "[g]ood reason for expanding the appeal beyond ordinary limits should be demanded nonetheless." *Id.* Assuming that the § 1292(b) standard is at all different when an appeal as of right is underway, it is still necessary for the court to determine whether there is any good reason for expanding the appeal.

227 (S.D.N.Y. 2000)). "The controlling question of law certified for interlocutory appeal 'must also be a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record.'" *Id.* (quoting *Hart v. Rick's Cabaret Int'l, Inc.*, 73 F. Supp. 3d 382, 393 (S.D.N.Y. 2014)). As to whether there is substantial ground for difference of opinion, the court considers whether there is "substantial doubt that the district court's order was correct, [whether] there is conflicting authority on the issue, [and whether] the issue is particularly difficult and of first impression for the Second Circuit." *Id.* (quoting *Goldberg v. UBS AG*, 690 F. Supp. 2d 92, 103 (E.D.N.Y. 2010)).

### B. Private Right of Action for Equitable Relief under RICO

In its May 18 Order, the court concluded that equitable relief is available in private RICO actions. (Doc. 122 at 53.) According to the Tribal Defendants, the court's conclusion on that issue meets § 1292(b)'s test for interlocutory appeal. Plaintiffs disagree.

Although Plaintiffs did not argue in their briefing that there was no substantial ground for difference of opinion as to whether equitable relief is available in private RICO actions, all of the parties' briefing on this issue was filed before the Second Circuit's very recent decision in *Chevron Corp. v. Donziger*, Nos. 14-0826(L), 14-0832(C), 2016 WL 4173988 (2d Cir. Aug. 8, 2016). Plaintiffs have since called the court's attention to that decision. (Doc. 166.) In *Donziger*, the Second Circuit held that RICO does authorize the granting of equitable relief to a private plaintiff. *Donziger*, 2016 WL 4173988, at *52–55.

In light of the *Donziger* opinion, the court concludes that there is now no substantial ground for difference of opinion (at least within the Second Circuit) regarding whether equitable relief is available in private RICO actions. *See Kellogg v. Wyeth*, 612 F. Supp. 2d 437, 439 (D. Vt. 2009) (recent Supreme Court decision substantially reduced the grounds for difference of

7

opinion). It is therefore unnecessary to reach the other two prongs of the § 1292(b) inquiry on this issue. The court will accordingly deny the Tribal Defendants' request for certification as to whether equitable relief is available in private RICO actions.

### C. Personal Jurisdiction over Rees and Sufficiency of the Pleadings

In its May 18 Order, the court stated that it would assume the truth of Plaintiffs' allegations that "Mr. Rees and the companies which he controls performed the actual work of Plain Green," and concluded that "the role of Rees and the Think Defendants in providing the leadership, underwriting, marketing, and servicing for the Plain Green loans subjects them to personal jurisdiction." (Doc. 122 at 19.) The court further stated that "[i]f, as Plaintiffs allege, these Defendants were the critical actors in making loans on illegal terms to Vermont residents, then they are subject to personal jurisdiction for claims arising out of the acts they performed." (*Id.* at 20.) Rees contends that interlocutory appeal under § 1292(b) is appropriate, asserting that the court's analysis of the pleadings and its conclusions regarding personal jurisdiction over him involve controlling questions of law for which there is substantial ground for difference of opinion and resolution of which would materially advance the resolution of litigation. Plaintiffs oppose Rees's contentions.

Challenges to the sufficiency of pleadings "are not generally the appropriate subjects of interlocutory review, as a reversal [on interlocutory appeal] at most could lead only to a remand for repleading, with possibilities of further interlocutory appeals thereafter." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 530 (S.D.N.Y. 2014) (internal quotation marks omitted; alteration in original) (quoting *In re Manhattan Inv. Fund Ltd.*, 288 B.R. 52, 56

(S.D.N.Y. 2002)).[4] The court is unpersuaded that this case presents an exception to that general rule.

Here, Plaintiffs previously requested that, if the court decided they had not established their prima facie case, they should be entitled to conduct discovery on the issue of personal jurisdiction. (*See* Doc. 85 at 46.) The court concluded that Plaintiffs had established a prima facie case for personal jurisdiction over Rees, so it did not order jurisdictional discovery on that issue. Thus, as in *Jenkins v. Miller*, if a reviewing court were to reverse the court's conclusion that Plaintiffs had established a prima facie case, "the issue of whether to allow jurisdictional discovery would remain to be determined on remand," and thus "reversal of the order would not terminate the action." 2014 WL 5421228, at *1; *see also Koehler*, 101 F.3d at 866 ("Although asked to review the district court's initial determination of a *prima facie* showing of *in personam* jurisdiction, we conclude that this issue is prematurely before us. . . . When the question of discovery was raised in the trial court, the court declined to rule on it. Hence, either way we rule, a remand will be required.").

Rees asserts that the Second Circuit in *Koehler* specifically confirmed the appropriateness of permitting an appeal "when the interlocutory order involves issues of *in personam* jurisdiction." *Koehler*, 101 F.3d at 866. But at the same time, the *Koehler* court stated that § 1292(b) "was not meant to substitute an appellate court's judgment for that of the trial

---

[4] The authorities the *In re Facebook* court cited for that proposition include *Gottesman v. General Motors Corp.*, 268 F.2d 194, 196 (2d Cir. 1959). Plaintiffs rely on *Gottesman* in their opposition, asserting that interlocutory appeals of decisions on the sufficiency of pleadings are generally futile. (*See* Doc. 154 at 3.) Rees criticizes Plaintiffs' reliance on *Gottesman*, asserting that it is a half-century old decision on an unrelated issue that was decided before the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). (*See* Doc. 159 at 2.) However, as the court recognized in *In re Facebook*—a decidedly post-*Iqbal* decision—the principle stated in *Gottesman* remains applicable today.

court." *Id.* There may be cases where it is proper for an appellate court to review a district court's decision finding a prima facie case of personal jurisdiction; indeed, as Rees notes, there is no blanket rule precluding such review. However, the court concludes that this case—like *Jenkins*—is not one of them.

In addition, as in *Jenkins*, this case involves more than one defendant, so even if the Second Circuit concluded on interlocutory appeal that Rees must be dismissed for lack of personal jurisdiction, the termination of the litigation would not be materially advanced. *See Jenkins*, 2014 WL 5421228, at *1. Rees correctly notes that there are some cases where dismissal of a single defendant in a multi-defendant case *would* materially advance the litigation. *See New York v. Gutierrez*, 623 F. Supp. 2d 301, 317–18 (E.D.N.Y. 2009) (dismissal of single defendant would eliminate the only non-federal defendant and all state-law issues from the case, and would also substantially narrow the scope of potential relief), *rev'd on other grounds sub nom. New York v. Atl. States Marine Fisheries Comm'n*, 609 F.3d 524 (2d Cir. 2010). Even if Rees were to be dismissed, it does not appear that the issues and relief available would be narrowed as drastically as in *Gutierrez*. Interlocutory appeal of the court's ruling regarding personal jurisdiction over Rees will not materially advance the litigation.

### III.  Motions to Stay Pending Appeal

Rees and the Tribal Defendants have each filed motions to stay the proceedings pending appeal. (Docs. 136, 143.) The remaining Defendants have joined one or both of those motions. (*See* Docs. 137, 144.) The Tribal Defendants (joined by the Think Defendants, TCV, and Sequoia) devote most of their analysis to the question of whether a stay is appropriate while the Second Circuit reviews the issue of whether the Tribal Defendants are entitled to tribal sovereign immunity. (*See* Docs. 136, 137, 144.) Rees (joined by the Think Defendants) primarily

contends that the case should be stayed while the Second Circuit reviews the issue of arbitrability. (*See* Docs. 143-2, 144.)[5] Plaintiffs oppose the motions to stay, arguing that they are merely delay tactics, and that Defendants have failed to prove that they are entitled to a stay for either the arbitration appeal or the immunity appeal. (*See* Doc. 153 at 6.)

      A.      **Rees's Motion to Stay—Arbitrability Issue**

The parties agree (*see* Docs. 143-2 at 8; 153 at 6) that, in the Second Circuit, there is no *automatic* stay (or deprivation of jurisdiction to proceed in the trial court) when a party appeals an order denying a motion to compel arbitration. *See Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 54 (2d Cir. 2004) ("[F]urther district court proceedings in a case are not 'involved in' the appeal of an order refusing arbitration, and . . . a district court therefore has jurisdiction to proceed with a case absent a stay from this Court.").[6] However, under the approach adopted in *Uzan*, "either the district court or the court of appeals may—but is not required to—stay the proceedings upon determining that the appeal presents a substantial question." *Uzan*, 388 F.3d at 54 (citing *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 & n.8 (9th Cir. 1990)); *see also Denney v. Jenkens & Gilchrist*, 362 F. Supp. 2d 407, 417–18 (S.D.N.Y. 2004). "This is a proper subject for the exercise of discretion by the trial court." *Britton*, 916 F.2d at 1412.

Generally, in deciding whether to order a stay pending appeal, the court considers: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance

---

[5] Although the two motions to stay focus on different aspects of the appeal, all Defendants appear to assert that the arbitration appeal and the immunity appeal are each sufficient to warrant a stay of the entire case. (*See* Doc. 145.)

[6] Prior to *Uzan*, some courts had held that "[o]rdinarily, when a party appeals an order denying a motion to compel arbitration, the district court should stay the action pending appeal." *Denney v. Jenkens & Gilchrist*, 340 F. Supp. 2d 348, 349 (S.D.N.Y. 2004) (citing cases).

of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *SEC v. Citigroup Global Markets, Inc.*, 673 F.3d 158, 162 (2d Cir. 2012) (per curiam) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see also In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007). "[T]he degree to which a factor must be present varies with the strength of the other factors." *In re World Trade Ctr.*, 503 F.3d at 70; *see also Mohammed v. Reno*, 309 F.3d 95, 100–01 (2d Cir. 2002) (noting various formulations used to describe the requisite degree of showing of success on the merits, and concluding that the degree of possibility of success varies according to the court's assessment of the other stay factors).[7]

Beginning with the first factor, the court concludes that the arbitrability issue presents a substantial question on appeal. The issue is substantial, as reflected in the volume of briefing supplied by the parties, and the depth of analysis required in the court's May 18 Order. Indeed, the court previously remarked that it viewed arbitration as the "hottest issue" in the case. (Doc. 106 at 5.) Plaintiffs point out that the court did not reach all of the potential issues in its analysis—such as whether *all* Defendants are subject to the arbitration clause. (*See* Doc. 153 at 10.) To some extent, that suggests that Defendants' path to victory on the arbitrability issue is more difficult, since at least some Defendants would have to prevail on additional issues apart from those addressed in the May 18 Order. On the other hand, the presence of potential

---

[7] If one read only the opinion in *Uzan*, one might be tempted to conclude that "substantial question" is the proper formulation in all cases involving whether to enter a stay pending appeal of an order denying a motion to compel arbitration, and that it is the only factor to be considered in such a case. The Ninth Circuit's opinion in *Britton* indicates, however, that the "substantial question" formulation was only an example, and that other factors—such as harm if the action is not stayed—may also be relevant. *See Britton*, 916 F.2d at 1412. The court therefore proceeds to evaluate the four factors recited above.

12

additional issues lends support to the conclusion that the arbitrability issue as a whole presents a substantial question on appeal.[8]

The balance of hardships also favors granting a stay in this case. If the court does not issue a stay, and if the Second Circuit determines on appeal that the parties must go to arbitration, then Defendants will have been deprived of the benefits of dispute resolution by arbitration. *See Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1251 (11th Cir. 2004) ("[O]ne of the principal benefits of arbitration, avoiding the high costs and time involved in judicial dispute resolution, is lost if the case proceeds in both judicial and arbitral forums. If the court of appeals reverses and orders the dispute arbitrated, then the costs of the litigation in the district court incurred during appellate review have been wasted and the parties must begin again in arbitration."); *Bradford-Scott Data Corp. v. Physician Comput. Network, Inc.*, 128 F.3d 504, 506 (7th Cir. 1997) ("Arbitration clauses reflect the parties' preference for non-judicial dispute resolution, which may be faster and cheaper. These benefits are eroded, and may be lost or even turned into net losses, if it is necessary to proceed in both judicial and arbitral forums, or to do this sequentially. The worst possible outcome would be to litigate the dispute, to have the court of appeals reverse and order the dispute arbitrated, to arbitrate the dispute, and finally to return to court to have the award enforced.").[9]

---

[8] Defendants' motions to compel arbitration are certainly not the type of "frivolous" motion designed to stall a trial that was a cause for concern in *Britton*, 916 F.2d at 1412.

[9] Of course the Second Circuit in *Uzan* declined to follow *Blinco* and *Bradford-Scott* insofar as those cases held that a district court may never proceed after the filing of a nonfrivolous appeal from an order denying arbitration. *See Uzan*, 388 F.3d at 54. However, nothing in *Uzan* suggests that the Second Circuit has rejected those decisions' articulations of potential harms when district courts decline to stay the proceedings. *Uzan* merely permits district courts to find, in the appropriate case, that other factors outweigh those potential harms.

Meanwhile, issuance of a stay will not substantially injure Plaintiffs. Plaintiffs contend that they are suffering reputational harm associated with negative impacts on their credit ratings stemming from the loans at issue. But that alleged harm comes from Plaintiffs' underlying claims. Plaintiffs also contend that the prospect that they might not recover any money is an irreparable injury. That, too, concerns the merits of Plaintiffs' underlying claims rather than the entry of a stay. Plaintiffs further assert that they face harm because they cannot afford the cost to travel to Montana for an arbitration. Again, entry of a stay will not cause that expense; it depends on the merits of the arbitrability appeal, and on whether Plaintiffs elect to have the arbitration on the Tribe's land or within 30 miles of their residence.

Plaintiffs additionally argue that Defendants are attempting to hide their assets in a new corporation, Elevate Credit, Inc. (*See* Doc. 153 at 17.) According to Plaintiffs, Defendants' pursuit of a stay is a delay tactic "designed to frustrate efforts to find information that could be used to stop their ongoing shell game." (*Id.* at 18.) Rees insists that there has been no fraudulent transfer. (Doc. 160 at 7–8.) The court is in no position now to decide whether there has been any fraudulent transfer to Elevate Credit, Inc. However, entry of a stay will not prevent Plaintiffs from using the tools available in whatever forum turns out to be appropriate to investigate that possibility. More generally, Plaintiffs assert that the delay associated with a stay will result in the loss of discoverable information. In light of the other factors discussed here, that risk—which comes with any delay—is insufficient to deny a stay.

The final factor concerns the public interests that may be affected. Here, entering a stay will promote judicial efficiency: if Defendants are correct on the arbitrability issue, then parallel court proceedings will have been enormously wasteful. The same is true in light of federal public policy favoring arbitration.

### B.    Tribal Defendants' Motion to Stay—Tribal Sovereign Immunity Issue

Citing *In re Facebook, Inc., IPO Securities & Derivative Litigation*, 42 F. Supp. 3d 556, 558 (S.D.N.Y. 2014), the Tribal Defendants contend that their interlocutory appeal of the court's denial of their tribal immunity defense divests the court of jurisdiction to proceed unless the court certifies the appeal as frivolous. Alternatively, they assert that a stay is warranted under the four-factor test recited in cases such as *In re World Trade Center Disaster Site Litigation*, 503 F.3d 167, 170 (2d Cir. 2007), and *United States ex rel. Stevens v. State of Vermont*, No. 1:95-cv-161, 1997 U.S. Dist. LEXIS 23676, at *2 (D. Vt. June 30, 1997). Plaintiffs maintain that the court is not divested of jurisdiction, and that the four-factor test favors proceeding with the litigation.

The court concludes that it need not decide whether the Tribal Defendants' immunity appeal deprives the court of jurisdiction to proceed with this case against them. Even if it does not, a stay is appropriate as to the Tribal Defendants for reasons similar to those favoring a stay while the parties appeal the arbitrability issue. Like the arbitrability issue, the immunity issue presents a substantial question on appeal, involving, among other things, resolution of the effect of the Supreme Court's decision in *Michigan v. Bay Mills Indian Community*, 134 S. Ct. 2024 (2014). Moreover, if the court does not issue a stay, and if the Second Circuit determines on appeal that the Tribal Defendants are immune, then the Tribal Defendants will have been deprived of a right not to be tried. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (entitlement to immunity from suit "is effectively lost if a case is erroneously permitted to go to trial"); *see also Stevens*, 1997 U.S. Dist. LEXIS 23676, at *2 ("[I]t appears the State will be irreparably harmed if this suit proceeds to discovery, and the State ultimately prevails on the [immunity] appeal."). As discussed above, issuance of a stay will not substantially injure

Plaintiffs. And public policy favors entering a stay, given the respect due to the Tribe's sovereignty and the possibility that the Tribal Defendants might be entitled to immunity.

The remaining Defendants assert that the Tribal Defendants are indispensable parties, and that if the Second Circuit determines that the Tribal Defendants are immune, then the entire litigation must be terminated under Fed. R. Civ. P. 19. (*See* Doc. 145 at 3; *see also* Docs. 135-1 at 3 n.2; 136-1 at 8.) The court need not decide that question because—as discussed above—the arbitrability issue supplies an independent basis to stay the case as to the remaining Defendants.

## IV. Plaintiffs' Motion for Entry of a Discovery Schedule

As noted above, Plaintiffs filed a motion for entry of a discovery schedule on June 3, 2016. (Doc. 125.) They assert that, since the court's May 18 Order, the parties have been unable to reach an agreement on the discovery schedule or on the scope of any jurisdictional discovery. (*Id.* at 3.) Alleging that Defendants are engaging in a pattern of purposeful delay, Plaintiffs seek immediate entry of a discovery schedule. (*See id.* at 2–3.) All Defendants oppose Plaintiffs' motion, arguing that it makes no sense to enter an order scheduling discovery until the court resolves the pending motions to stay pending appeal. (Doc. 145.) Defendants also assert that entry of a discovery schedule would be premature, since the parties have not yet held a Rule 26(f) conference. (*Id.* at 2.) Plaintiffs maintain that the appeals provide no basis for denying entry of a discovery schedule; that the Local and Federal Rules of Civil Procedure authorize their discovery request; and that a Rule 26(f) conference is no barrier to discovery. (Doc. 155.)

Within days of Plaintiffs' motions for entry of a discovery schedule, all Defendants filed notices of appeal, and simultaneously sought to stay the case pending appeal. For the reasons discussed above, the court grants the motions to stay. The stay as to the Tribal Defendants

extends to matters of discovery. As the Supreme Court in *Mitchell* noted, where there is a question about immunity from suit, "even such pretrial matters as discovery are to be avoided if possible." *Mitchell*, 472 U.S. at 526. Of course, "a defendant's mere assertion of immunity can not be sufficient to stay all discovery in exigent circumstances." *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, No. 07 Civ. 2014(SWK), 2007 WL 1121734, at *3 (S.D.N.Y. Apr. 11, 2007). However, the court does not believe exigent circumstances are present in this case.

The court concludes that the stay should also extend to matters of discovery for the remaining Defendants. "[D]iscovery on the subject matter of a dispute to be arbitrated should be denied in the absence of extraordinary circumstances." *Hughes, Hooker & Co. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc.*, No. 04 Civ. 1859(SHS), 2005 WL 1384055, at *7 (S.D.N.Y. June 9, 2005) (quoting *Falcone Bros. P'ship v. Bear Stearns & Co.*, 699 F. Supp. 32, 35 (S.D.N.Y. 1988)). Here, given the breadth of the arbitration clauses (assuming they apply),[10] discovery would be intertwined with the subject matter of the dispute(s) to be arbitrated. Again, the court finds no basis for concluding that exigent or extraordinary circumstances are present here.

## V.  Plaintiffs' Motion for Sanctions

On June 13—soon after filing their motion for entry of a discovery schedule—Plaintiffs filed a motion for sanctions against TCV and Sequoia, alleging that those defendants had failed to comply with the court's May 18 Order requiring jurisdictional discovery. (Doc. 126.) TCV and Sequoia oppose the motion, asserting that Plaintiffs failed to comply with Local Rule 26(d)'s

---

[10] As the court previously observed, the arbitration clauses are detailed and "require the borrowers to submit any dispute to binding arbitration, including disputes with 'related third parties.'" (Doc. 122 at 4.)

conference and affidavit requirements; that other pending motions impact the discovery schedule; and that the four-part standard for sanctions under Rule 37(b) is not met. (Doc. 151 at 2.)

Putting aside the parties' dispute over the requirements of Local Rule 26(d), the court concludes that there is no basis for the imposition of sanctions. Under Fed. R. Civ. P. 37(b), the court has authority to impose sanctions for failure to comply with discovery obligations. Several factors are useful in deciding whether to impose sanctions: "(1) the willfulness of the non-complaint party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *SEC v. Razmilovic*, 738 F.3d 14, 25 (2d Cir. 2013) (quoting *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010)).

Here, it is true that the court stated in its May 18 Order that it would exercise its discretion to permit discovery on the question of personal jurisdiction over Sequoia and TCV. (Doc. 122 at 25.) But as Plaintiffs' motion for entry of a discovery schedule suggests, the court did not enter a discovery schedule at that time. For the same reason, any "noncompliance" was not willful. TCV and Sequoia believed that no discovery responses were due, and that a stay was appropriate in light of the notices of appeal. Of course, filing a motion to stay does not automatically relieve a party from compliance with its discovery obligations. *Willemijn Houdstermaatschaapij BV v. Apollo Comput. Inc.*, 707 F. Supp. 1429 (D. Del. 1989) (if that were the case, the movant would be able to effectively "grant[] itself a stay of discovery"). But since the court did not enter a discovery schedule simultaneously with the May 18 Order, it is difficult to see how TCV and Sequoia could be required to immediately begin supplying jurisdictional discovery before the parties agreed on (or the court entered) a discovery schedule.

## Conclusion

TCV and Sequoia's Motion to Clarify the Court's May 18, 2016 Opinion and Order as to their Motions to Dismiss (Doc. 123) is DENIED.

Plaintiffs' Motion for Entry of a Discovery Schedule (Doc. 125) is DENIED.

Plaintiffs' Motion for Rule 37(b) Sanctions (Doc. 126) is DENIED.

The Tribal Defendants' Motion for Certification of the Court's May 18, 2016 Order for Interlocutory Appeal (Doc. 135) is DENIED.

Rees's Motion to Amend the Order of May 18, 2016 to Certify the Order for Interlocutory Appeal (Doc. 141) is DENIED.

Each of the Motions to Stay Pending Appeal—as filed or joined by other Defendants—(Docs. 136, 137, 143, 144) is GRANTED. This case is STAYED during the pendency of Defendants' appeals from the May 18 Order.

Dated at Rutland, in the District of Vermont, this 22 day of August, 2016.

_____
Geoffrey W. Crawford, Judge
United States District Court